636 F.2d 55
 John B. ANDERSON; D. A. Bert Booth; Kevin P. McCleaf; Gerald
M. Eisenstat, Appellees,
v.
Willard A. MORRIS, in his official capacity as State
Administrator of the Election Laws, State Administrative
Board of Election Laws; Theodore N. Clark, in his official
capacity as Chairman of the State Administrative Board of
Election Laws; James W. Johnson, in his official capacity as
Vice-Chairman of the State Administrative Board of Election
Laws; Reginald A. Aspen, in his official capacity as a
member of the State Administrative Board of Election Laws;
Karen Lancaster, in her official capacity as a member of the
State Administrative Board of Election Laws; Sylvia Raphael,
in her official capacity as a member of the State
Administrative Board of Election Laws; State Administrative
Board of Election Laws, Appellants.
 No. 80-1534.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 8, 1980.
Decided Sept. 17, 1980.
 
 Robert A. Zarnoch, Diana G. Motz, Asst. Attys. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Md., George A. Nilson, Deputy Atty. Gen., Baltimore, Md., on brief), for appellants.
 George T. Frampton, Jr., Washington, D.C. (Mitchell Rogovin, Ellen S. Semonoff, Rogovin, Stern & Huge, Washington, D.C., Henry R. Lord, Michael C. Powell, Thomas J. Gisriel, Piper & Marbury Baltimore, Md., on brief), for appellees.
 Before HAYNSWORTH, C. J., and WINTER and PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 At the instance of presidential candidate John B. Anderson and various of his supporters, the district court ruled that Maryland's filing deadline for candidates for the presidency of the United States who seek nomination by petition was unconstitutional. Accordingly, it ordered Maryland election officials to place Mr. Anderson's name on the general election ballot as an independent candidate if, on or before August 4, 1980, the petition for his nomination otherwise complied with the requirements of Maryland law. Anderson v. Morris, 500 F.Supp. 1095 (D.Md.1980). The state election officials have appealed, and we affirm.
 
 
 2
 We find ourselves essentially in agreement with the opinion of the district court both as to the facts and the applicable law.[1] While we are content to affirm primarily on the opinion of the district court, we append the following comments in summary of our own views:
 
 
 3
 In Maryland a candidate for the presidency who is not the candidate of a major political party may obtain access to the general election ballot by petition. Ann. Code of Md. Art. 33, § 7-1(a).[2] A candidate seeking nomination by petition must file a certificate of candidacy at the time and place and in the manner provided in Subtitle 4A of Article 33 and comply with other applicable provisions of law. Section 4A-3 requires the certificate of candidacy to be filed on the Monday which is ten weeks or seventy days before the day on which the primary election shall be held.[3] In a presidential election year the primary is held on the second Tuesday in May; thus for 1980, certificates of candidacy for nomination by petition were required to be filed by March 3, 1980.
 
 
 4
 A major party candidate for the presidency need never make any application or file any declaration of candidacy for either the primary or general election ballot. His name may appear on the primary ballot at the instance of the Maryland Secretary of State or by filing a petition containing the signatures of registered voters. § 12-2.[4] Even if the candidate does not participate in the primary or, if he does participate in the primary and is defeated, he may appear on the ballot for the general election if his nomination is certified by the persons whose duty it may be "by party usage" to declare the result of an election by convention, §§ 8-1(a); 5-1, and that certification need not be made until sixty-five days before the general election, § 8-4. In other words, a major party presidential candidate who does not choose to campaign in the Maryland primary or loses the primary may still appear on the Maryland ballot in November if he is nominated by the party convention.
 
 
 5
 It is manifest that Maryland imposes harsher restrictions on an independent candidate for the presidency than on the candidate of a major party, and, in particular, that an independent candidate for the presidency must formally declare his candidacy at an earlier date than one who subsequently appears on the general election ballot as the candidate of a major party.[5] In determining the validity of such a restriction, we perceive that we must consider two factors: first, is the restriction necessary to serve a substantial state interest, and, second, if so, is it unduly burdensome on the right of an independent candidate to gain access to the ballot. Elections Board v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1970); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). We think that, with respect to presidential candidates, Maryland's early filing date in issue fails the first test.
 
 
 6
 Before us, Maryland vigorously argues that the early filing date furthers stability in the political process.[6] We do not doubt the legitimacy of the asserted interest. A state may properly conclude that intraparty disputes should be settled in party primaries, that the general election ballot is reserved for major political struggles, that it should not be the forum for continuing intraparty feuds and that losers in primaries should not be permitted to continue the struggle, all to the end that the general election ballot shall present the electorate with understandable choices and the winner shall have sufficient support to govern effectively. See, e. g., Storer v. Brown, 415 U.S. at 735, 94 S.Ct. at 1281; Williams v. Rhodes, 393 U.S. at 31-33, 89 S.Ct. at 10-11. We cannot conclude, however, that the early filing date under attack achieves or helps to achieve these objectives.
 
 
 7
 Maryland has a "sore loser" statute, § 8-2, which prohibits a person defeated in a party primary for the nomination for an office, other than judge, from appearing on the general election ballot. But § 8-2, by its terms, contains certain exceptions for presidential candidates. In the instant case, Maryland concedes that it has no application in this case, that is, that Mr. Anderson is not barred by § 8-2 from appearing on the general election ballot notwithstanding that he was technically a defeated candidate in the Maryland Republican presidential primary.[7] If it were possible for a state to adopt a sore loser law applicable in all circumstances to presidential races, this would be a means of serving the interests that Maryland asserts.[8]
 
 
 8
 But we cannot conclude that Maryland's early filing date is in the nature of a sore loser statute or that it furthers the asserted state interests in any respect. This conclusion follows from the fact that Maryland does not prohibit a presidential candidate from both participating in his party's primary and seeking nomination by petition simultaneously for the same general election.[9] Thus, there is no relationship whatsoever between (1) a presidential candidate's deciding by March 3 to seek nomination as an independent, and (2) entering, winning or losing Maryland's primary.[10]
 
 
 9
 Failing to achieve a legitimating purpose, Maryland's early filing date for presidential candidates for nomination by petition is invalid. The mandate shall issue forthwith.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The facts were stipulated and the case was submitted on cross motions for summary judgment
 
 
 [2]
 This and all subsequent statutory references are to Ann. Code of Md., Art. 33 (1976 Ed. and 1979 Cum.Supp.)
 
 
 [3]
 By the provisions of § 7-1 the certificate of candidacy must be accompanied by at least one-third of the requisite signatures of eligible registered voters who support the petition. The remaining signatures may be filed at a later date. In the instant case Mr. Anderson failed to comply with the filing date for the certificate of candidacy and the initial requisite signatures. He did, however, supply the remaining signatures within the time fixed by law. The validity of the signatures requirement is not at issue here
 
 
 [4]
 This petition is different from the petition procedure authorized by § 7-1. Under § 12-2, a person seeking to be the nominee of a party which uses a presidential primary may obtain access to the primary ballot. Under § 7-1 a person may obtain access to the general election ballot. See n.9, infra
 
 
 [5]
 Maryland argues that as a practical matter major party candidates for nomination must declare themselves at least a year preceding the year of the general election. We reject the argument because we are concerned with the date of formally registering a candidacy under Maryland law rather than the date of personal or political commitment to become a candidate. Similarly, we do not think it determinative that Mr. Edward Clark, the Libertarian Party candidate for president, has been successful in obtaining a place on Maryland's general election ballot by the route sought to be followed by Mr. Anderson. What we are concerned with in the instant case is what Maryland requires to be done, not what it was possible for another candidate to do
 
 
 [6]
 The opinion of the district court discloses that Maryland advanced other arguments before it to justify the early filing date. They were not pressed before us and we do not comment on them beyond the disposition made of them in the district court's opinion
 
 
 [7]
 Pursuant to § 12-2, the Maryland Secretary of State placed Mr. Anderson's name on the Republican Party primary ballot. While Mr. Anderson could have withdrawn up to March 21, he did not do so. His announcement that he would pursue his candidacy as an independent was not made until April 24, 1980. Thereafter, he discontinued his campaign for the nomination of the Republican Party. Mr. Anderson's name remained on the Maryland primary ballot and he lost the election
 
 
 [8]
 Of course, it is improbable that such a statute could be adopted by reason of the very nature of the American political process for the selection by the major parties of their presidential candidates. Because candidates are selected by convention and the convention occurs after all state primary elections have been concluded, a state must make provision for a candidate nominated by national convention to appear on its general election ballot even if the candidate did not appear on the primary ballot in that state, or, having appeared, was defeated in the state primary. We do not express any view on the constitutionality of a presidential sore loser statute containing such exceptions
 
 
 [9]
 Maryland argues that it is "absolutely false" that a candidate may seek nomination as a candidate of a major party in the presidential primary and also seek access to the general election ballot as an independent. As we read the Maryland statutes, they do not support this argument
 Under § 12-2(a)(1), the name of a candidate who seeks the nomination of a major party is placed on the primary ballot by the Secretary of State "when he has determined .. that the candidate's candidacy is generally advocated or recognized in the news media throughout the United States or in Maryland ...," subject to withdrawal by the candidate. Even if the Secretary of State might properly conclude not to direct inclusion of the name of a candidate on the ballot, because the Secretary has knowledge that the candidate is also seeking access to the general election ballot by petition under § 7-1(a), the candidate who seeks the nomination of a major party may also gain access to the primary ballot by petition under § 12-2(a)(2). Under that statute, he need only pay the prescribed fee and file the required petition, supported by only four hundred of the registered voters within each congressional district, not later than fifty-three days before the primary election.
 The eligibility requirements of a candidate to seek nomination by petition under § 7-1 are stated in the disjunctive. The pertinent one is "(a) candidate for any public office ... who is a member of or affiliated with a partisan organization which is not a political party ...." The term "partisan organization" is defined by § 1-1(a)(12) to mean "any combination of two or more persons formed for the purpose of assisting the promotion of the success or defeat of any candidate, political party, principle or proposition to be submitted to a vote at any election." Thus, it is entirely possible for a person to be a member of a political party and to be a member of or affiliated with a partisan organization simultaneously. A hypothetical example would be a person who was registered as a member of a major political party and who, desiring to be elected president, also affiliated himself with or joined a group formed for the sole purpose of advancing his candidacy.
 There is nothing that we perceive or to which Maryland points to prevent a voter or a candidate from being a member of a major party and a member of or affiliated with a partisan organization simultaneously: hence our conclusion that under the Maryland statutes a candidate may obtain access to his party's ballot for the presidential primary and simultaneously obtain access to the presidential general election ballot.
 
 
 [10]
 Maryland argues that a candidate could not seek both routes to the ballot as a practical political matter. Assessing the "political realities" of a statutory scheme is an appropriate inquiry in evaluating the burden of the scheme, but it plays no part in determining whether the statute serves a substantial state interest