Thomas P. MATHERS, et al.

v.

Willard A. MORRIS, et al.

Civ. No. Y–81–622.

United States District Court,
D. Maryland.

April 24, 1981.

Robert J. Booze, Rockville, Md., and Stuart R. Blatt, Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen. for the State of Md., Baltimore, Md., and Alfred L. Scanlan, Jr., Asst. Atty. Gen. for the State of Md., Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Thomas P. Mathers, the nominee of the Libertarian Party of Maryland for the special election to the United States Congress in the Fifth Congressional District, has filed suit against Maryland Election Officials challenging the constitutionality of state laws which have thus far prevented him from being placed on the special general election ballot. Joining Mathers as plaintiffs are E. Christine Fishbeck, a registered voter eligible to vote in the special general election, who wishes to cast her vote for Mathers, and the Libertarian Party of Maryland, the officially affiliated state party organization for the National Libertarian Party. The plaintiffs have filed a motion for injunctive relief and the defendants have moved for summary judgment. Since the parties have filed a joint stipulation of facts and the issues relevant to the upcoming special general election are ripe for disposition, those issues will be resolved on an expedited basis pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure. The relief sought by plaintiffs unrelated to the upcoming special election, which has not yet been addressed by the parties, will not be considered at this time.*

---

* The only issue remaining unresolved in light of this Court's decision is the claim of plaintiffs in their original complaint that they are entitled to representation on the State Administrative Board of Election Laws. This claim was not included in the plaintiffs' Motion For Preliminary and Permanent Injunction and has not been addressed in any of the plaintiffs' subse-

The plaintiffs assert that the number of signatures required for nomination by petition, together with the early deadline imposed for filing the total required number of signatures and the relatively short time period available in which to gather the signatures, impose an unconstitutional burden on the freedoms of speech and association, protected by the First and Fourteenth Amendments to the Constitution, and the fundamental right to vote, protected by the Fourteenth Amendment to the Constitution.

The plaintiffs also contend that, if Mathers is allowed on the ballot, he should be allowed to designate his political affiliation and that the provisions of Art. 33, § 9A–1 prohibiting such designation on the ballot unless the candidate is affiliated with a "political party" or "party" as defined in Art. 33, § 1–1(a)(15), is unconstitutional as applied to the candidate and the Libertarian Party of Maryland.

For reasons stated below, this Court has concluded that the timing of the deadlines for submitting the total number of required signatures represents an unconstitutional restriction under the circumstances of this special election and that the State Election Officials must accept the signatures tendered by the plaintiff on April 7, 1981. If a sufficient number of those signatures prove valid, and the candidate is found otherwise qualified, he must be placed on the ballot for the special general election. However, this Court is not persuaded that the candidate is entitled to have a designation of his political affiliation on the ballot as the State has determined that he has not met the requirements of Art. 33, § 9A–1, the applicable provisions of which this Court finds constitutionally acceptable under the circumstances of this case.

## FACTS

On February 24, 1981, the office of the United States Representative for the Fifth District of Maryland was declared vacant by resolution of the United States House of Representatives, due to the incapacitating illness of Representative-elect Gladys Noon Spellman. H.Res. 80, 97th Cong., 1st Sess. (1981). Two days later, the Governor of Maryland issued a proclamation pursuant to Article 33 section 22–1(b) of the Annotated Code of Maryland directing that the special primary election be held on April 7, 1981 and the special general election on May 19, 1981. On March 6, 1981, the Libertarian Party of Maryland nominated the plaintiff, Thomas P. Mathers, as its candidate for the Congressional seat to be filled by the special election. On March 10, 1981, Mathers met with Willard A. Morris, the Administrator of the State Administrative Board of Election Laws, in an attempt to file a certificate of candidacy for the special general election. Morris refused to accept the certificate of candidacy because it was not accompanied by the number of signatures required under Art. 33, § 7–1(b)(2), which in this case would be 5,436 signatures of eligible voters from within the Fifth Congressional District. Morris informed Mathers that he still had until March 16, 1981, to file his certificate of candidacy with the required number of signatures. On March 16, 1981, Mathers submitted 1,156 signatures but was officially denied a place on the special election ballot. Mathers tendered an additional 6,309 signatures on April 7, 1981, the date of the special primary election, but the signatures were refused by election officials.

## LEGAL DISCUSSION

■ It has been held that the right to associate for political beliefs, and the right to cast one's vote effectively "rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). It is manifest that such interests are at stake in the instant case since Maryland law precludes Mathers from appearing on the special general election ballot and also prevents voters from effectively voting for him in the election. It is also clear that Maryland law treats the

quent pleadings. Accordingly, this claim is considered moot and/or abandoned by plaintiffs and that portion of the requested relief is denied without prejudice to be renewed by plaintiffs in future litigation, if such action is deemed appropriate by the plaintiffs.

plaintiffs differently than it treats the candidates and members of major political parties. The Election Code requires all candidates for Congress in a special election, except write-in candidates, to file certificates of candidacy not later than twenty-one days before the day on which the special primary election is to be held. Art. 33, § 4A–3. However, non-major party candidates who will not be nominated by primary election, must also comply with the petition requirements at that time. Art. 33, § 7–1. Those requirements include the filing of petitions signed by not less than three percent of the registered voters who are eligible to vote for the office for which the nomination is sought, all of which must be filed at the same time as the certificate of candidacy. Art. 33, §§ 7–1(b)(2) & (c)(3). Those harsher restrictions, applicable only to candidates who are not members of major political parties, clearly result in a burden upon fundamental rights and implicate equal protection guarantees. As the Supreme Court stated in *Williams v. Rhodes, supra* :

> "In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting first Amendment freedoms.' *NAACP v. Button*, 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963)."

393 U.S. at 31, 89 S.Ct. at 11. Furthermore, even where there is a compelling state interest involved, it has been required "that States adopt the least drastic means to achieve their ends." *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 185, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979). This equal protection analysis was recently applied to provisions of the Maryland Election Code discriminating against Independent candidates for the Presidency and the Fourth Circuit phrased the test as follows:

> "In determining the validity of such a restriction, we perceive that we must consider two factors: first, is the restriction necessary to serve a substantial state interest, and, second, if so, is it unduly burdensome on the right of an independent candidate to gain access to the ballot."

*Anderson v. Morris*, 636 F.2d 55, 57 (4th Cir. 1980). Accordingly, the same two part analysis will be applied to the restrictions involved in the instant case.

The defendants have advanced a number of interests which purport to justify the restrictions imposed by the Election Code upon non-major political party candidates in special elections. The majority of the "state interests" address the general concern of the State that ballot access generally be limited to serious candidates. *See, e. g., Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). However, the plaintiffs do not contend that the required number of signatures for nomination by petition, standing alone, is unconstitutional. Such an argument would have little merit given that Maryland law requires signatures of only three percent of the eligible voters, while a requirement of five percent of the total votes cast in the last general election has been upheld. *Storer v. Brown*, 415 U.S. 724, 738–740, 94 S.Ct. 1274, 1283–84, 39 L.Ed.2d 714 (1974); *see also, Anderson v. Morris*, 500 F.Supp. 1095, 1100 n.6 (D.Md.), *aff'd*, 636 F.2d 55 (4th Cir. 1980). Rather, the plaintiffs argue that the required number of signatures in combination with the early deadline imposed for filing the signatures and the short time period available in which to gather signatures, unconstitutionally burdens their fundamental rights. *See, McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980).

The only state interest which arguably supports the requirement that the total number of signatures be filed at the same time as the certificate of candidacy is the administrative interest in adequate time to verify petitions and print ballots. *Salera v. Tucker*, 399 F.Supp. 1258, 1267 (E.D.Pa. 1975), *aff'd*, 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976); *Anderson v. Morris, supra*, 500 F.Supp. at 1100. This state interest is particularly acute in the case of

special elections where the unique and untimely circumstances necessarily require an expedited and compressed schedule. However, the specific provisions of the Maryland statutory scheme for special elections do not support an argument based upon administrative interests. The Election Code requires that a petition containing the total number of required signatures be filed in the office of the appropriate local board not later than twenty-one days before the day on which the special primary election is to be held. Art. 33, §§ 4A–3, 7–1(c)(3) and 7–1(f). The local board then has the responsibility under the statute for verifying the signatures contained in the petitions. Art. 33, § 7–1(g). However, the local board must submit those petitions to the State Administrative Board of Election Laws one week later, *after* verification and endorsement. Art. 33, § 7–1(j)(3). Since the statute itself expressly contemplates that seven days will be adequate for the local boards to verify the signatures submitted to them in the case of a special election, there seems to be no valid reason why the entire number of signatures should be required three weeks before the date of the special primary election. The State has no substantial interest which would justify such an early deadline for the submission of the entire number of signatures, particularly since the major political party candidates will not be known until after the special primary election. Requiring the total number of signatures from non-major party candidates at the same time that major political party candidates are only required to submit a certificate of candidacy imposes harsher restrictions upon the former which simply cannot be justified under the statutory scheme. For that reason, the deadline for filing the total number of signatures must be found constitutionally invalid.

Since this Court finds the timing of the statutory scheme unnecessary to serve any substantial state interest, the second part of the constitutional test—the burden upon the fundamental rights of the plaintiffs—need not be applied. It should be noted, however, that restrictions upon ballot access often prove particularly burdensome within the context of special elections. The state interest in filling the vacant office will undoubtedly justify some restrictions upon candidates, both major party and non-major party ones. However, the State should exercise caution to assure that it does not sacrifice fundamental rights in its haste to fill the vacant seat. If no substantial state interest is served by a restriction which treats non-major party candidates differently from major party candidates, such a restriction cannot be constitutionally enforced.

The plaintiffs filed this suit on March 19, 1981, three days after Mathers was officially denied a place on the special general election ballot for failure to submit the entire number of required signatures with his certificate of candidacy. This Court takes no position on what date should be set by statute as a deadline for the submission of all required signatures, except to find that, under the circumstances of this case, no substantial state interest is served by requiring all such signatures by March 16, 1981. The plaintiffs tendered 6,309 signatures to State Election Officials on April 7, 1981, the date of the special primary election, and defendants have taken steps to prepare alternate plans which would include Mathers on the ballot. Thus, the defendants must accept all signatures tendered by the plaintiffs on or before April 7, 1981, and if Mathers is found to be otherwise qualified, he must be placed on the special general election ballot.

The plaintiffs also seek to have the political affiliation of Mathers designated on the ballot in the upcoming special general election. Maryland law currently prohibits a candidate for public office from designating his political affiliation on the ballot unless he is affiliated with a "political party" or "party" as defined in Art. 33, § 1–1(a)(15). Art. 33, § 9A–1. The Libertarian Party had qualified as a political party prior to the November 4, 1980 Presidential Election by filing petitions signed by more than 10,000 qualified voters of the State. Art. 33, § 4B–1. However, because of the failure of its presidential candidate

to poll at least three percent of the vote statewide, the Libertarian Party lost its status as a political party under the statute. Art. 33, § 4C–1.

The plaintiffs do not challenge the constitutionality of the general organizational requirements for a new political party under the statute. They admit that the State may constitutionally require new political parties to evidence some degree of support before they are granted party status on the ballot. However, the plaintiffs do contend that the provisions of the statute which resulted in the revocation of the political party status of the Libertarian Party as a result of its failure to poll three percent of the entire vote in the last election are unconstitutionally burdensome, to the extent that such a requirement exceeds the requirements for initially gaining party status. Plaintiffs also contend that the combination of the required number of signatures for nomination of a candidate by petition and the required number of signatures for the formation of a political party prove unconstitutionally burdensome. For the reasons set forth below, this Court finds the plaintiffs' arguments unpersuasive and will not require the State to designate the political affiliation of Mathers in light of the failure of the Libertarian Party of Maryland to satisfy the applicable statutory requirements.

The Supreme Court has clearly recognized the state interest in requiring candidates and political parties to demonstrate some degree of support before granting them access to the ballot:

> "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot— the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."

*Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *see also, American Party of Texas v. White,* 415 U.S. 767, 789, 94 S.Ct. 1296, 1310, 39 L.Ed.2d 744 (1974). The Maryland requirements that a political organization gather 10,000 signatures for initial qualification as a political party and that such a party poll at least three percent of the statewide vote in order to maintain such status obviously serve that substantial state interest. The requirement for initial qualification prevents frivolous political organizations from gaining access to the ballot and thereby serves to preserve the order and integrity of the electoral process. The provisions of Art. 33, § 4C–1 which govern loss of status as a political party serve the same state interest by assuring that the support of political parties in actual elections does not dwindle to some insignificant level which would no longer justify their status as a political party under the statute. The mere fact that these restrictions were framed differently does not render either one unnecessary to serve the substantial state interest in this area. However, having found that these provisions do serve a substantial state interest, it is still necessary for this Court to delve into the second tier of the constitutional analysis, whether either or both of the restrictions are nonetheless unduly burdensome on the fundamental rights of the plaintiffs. *Anderson v. Morris, supra,* 636 F.2d at 57.

In considering the burden of these provisions, it is important to note at the outset that these restrictions, unlike the deadline for submitting the 5,436 signatures considered above, must be analyzed in a broader context than merely that of a special election. The Libertarian Party of Maryland was notified as early as December 1, 1980, that it had lost its status as a political party pursuant to Art. 33, § 4C–1. The Libertarian Party did not contact State Election Officials until February 15, 1981, to begin its new ballot drive and thereby lost valuable time in working towards meeting the statutory requirements. The plaintiffs confuse the issues by attempting to combine the signature requirement for nomination of a candidate by petition and the signature requirement for qualification as a political party. The former is by its nature confined to the context of a particular election and is therefore subject to dead-

lines necessitated by the timing of the election, an especially acute problem in the case of a special election. However, the signature requirement for qualification of a political party is part of an ongoing effort by the state to limit political party status and its attendant ballot rights to those organizations which are able to demonstrate "a significant modicum of support" on a continuing basis. Thus, the burden of the requirements for political party status must be considered in a broader context than that of the signature requirements for nomination by petition in a specific election.

Maryland has chosen to set up a two-part statutory scheme for determining political party status. In order to qualify initially as a political party under the statute, an organization must file petitions signed by at least 10,000 voters of the State. Art. 33, § 4B–1. This relatively low threshold requirement for initial qualification—less than one percent of the votes cast in the State in 1980 for President—is buttressed by a provision which removes such status from any political party which polls less than three percent of the entire state-wide vote in any election for President or Governor. Art. 33, § 4C–1. The plaintiffs would have this Court find that because the State has chosen to set a relatively low requirement for initial qualification, the Constitution does not allow the State to require somewhat higher levels of support in order to maintain political party status. This Court rejects such an argument as baseless under the guarantees of the Constitution and the Supreme Court decisions interpreting them.

The statutory requirement of 10,000 signatures statewide for initial qualification as a political party is a relatively minor restriction and does not unduly burden the rights of those seeking status as a political party. The number of signatures required represents less than one percent of the state-wide vote cast for President in 1980 and there are no significant time restrictions on the collection of such signatures. Obviously, in the case of a special election falling soon after the most recent statewide general election there are time restrictions

placed upon those organizations which lost political party status, but they are not unduly burdensome. In the instant case, the plaintiffs could have begun their new ballot drive to regain party status as early as November, 1980, a period of time which would have been more than adequate for an organization which was able to collect over 7,000 signatures within the Fifth Congressional District within the space of only one month. The Supreme Court has upheld a Georgia requirement that new political parties acquire petition signatures of five percent of the registered voters, *Jenness v. Fortson, supra,* and this Court can find no reason why a statutory scheme requiring less than one percent should not also be upheld.

Maryland does not stop at requiring 10,000 signatures to qualify as a political party but also requires political parties to poll at least three percent of the entire statewide vote in any election for President or Governor or lose their status as a political party. Art. 33, § 4B–1. This requirement is clearly more burdensome than the 10,000 signature requirement for obvious reasons. Not only is the number of required supporters higher, but the level of political commitment required is also stronger; supporters need not only sign a petition, they must go out and exercise their franchise in favor of the party's candidate. However, these differences do not automatically render the statutory scheme constitutionally invalid for, as noted above, the requirements for initial qualification in Maryland are relatively low. Furthermore, the statutory scheme provides that a party which loses its status as a political party may regain such status through the ordinary signature provisions of Art. 33, § 4B–1. Art. 33, § 4C–1(c). Given all the facets of the statutory scheme for determining political party status, this Court does not find the automatic denial of party status to the Libertarian Party to represent an unconstitutional burden on the fundamental rights of the plaintiffs.

The State has a substantial interest in requiring a "significant modicum of sup-

port" of political organizations before they are given status as political parties under the statute. *See, Jenness v. Fortson, supra* 403 U.S. at 442, 91 S.Ct. at 1976. That state interest does not disappear once an organization has complied with some initial threshold requirement, particularly where the initial requirement has been set at a relatively unrestrictive level. This Court knows of no reason why a state cannot enact a two-part statutory scheme so long as the totality of the restrictions imposed serve a substantial state interest and are not unduly burdensome. Even the most restrictive feature of the Maryland scheme requires only that a political party poll at least three percent of the state-wide vote and the plaintiffs have failed to demonstrate that this provision is unconstitutionally burdensome. No special effort need be diverted to meeting this requirement, as is the case with signature petition requirements, but rather it is part of the political party's direct effort to elect its candidates in the state-wide elections. If the state was unable to require some continued level of support for political organizations, it would be forced to operate on the assumption that "once a political party, always a political party," an assumption that would not be justified by the realities of our democratic political process. Instead, the State has chosen to require relatively low threshold levels of support for designation as a political party but then to require, as a condition to maintaining such status, that political organizations evidence their continued and valid support by some minimum showing at the polls. Even where a political party is unable to maintain its status because of failures at the polls, it can regain such status merely by submitting 10,000 new signature petitions. This statutory scheme does not transgress constitutional guarantees of fundamental rights and, as such, will not be held invalid.

Accordingly, it is this 24th day of April, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. That the State Election Officials accept all signatures tendered by the plaintiffs on or before April 7, 1981, for purposes of fulfilling the statutory requirements for nomination by petition in the upcoming special general election;

2. That if the plaintiff Mathers is found to be otherwise qualified for a position on the upcoming special general election ballot, his name be listed on the ballots for such election;

3. That the State Election Officials are NOT required to designate the political affiliation of the plaintiff Mathers on the ballot in the upcoming special general election;

4. That the claim of plaintiffs for representation on the State Administrative Board of Election Laws is held to be abandoned by the plaintiffs and this claim is dismissed without prejudice.