**LIBERTARIAN PARTY OF SOUTH DAKOTA; Emmett Elrod; Spencer Nesson; and David Bergland, Plaintiffs,**

v.

**Alice KUNDERT, Secretary of State, and Mark V. Meierhenry, Attorney General, Defendants.**

No. CIV. 83–3071.

United States District Court, D. South Dakota, C.D.

Jan. 25, 1984.

---

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., Max A. Gors, Gors & Braun, Pierre, S.D., for plaintiffs.

Grant Gormley, Asst. Atty. Gen., Pierre, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiffs, the Libertarian Party of South Dakota and certain individuals associated with the party, challenge as unconstitutional two provisions of South Dakota's election laws which regulate the manner in which a minority political party may gain access to the primary election ballot in South Dakota. Plaintiffs proceed under 42 U.S.C. § 1983 and this court exercises subject matter jurisdiction under 28 U.S.C. § 1343(a)(3). The two provisions challenged are contained in subsections (2) and (3) of S.D.C.L. § 12–5–1 as follows:

A new political party may be organized and participate in the primary election by filing with the Secretary of State at least one hundred twenty days before the date of the primary election a written declaration, signed by at least ten percent of voters of the state as shown by the total vote cast for Governor at the last preceding gubernatorial election, which declaration shall contain:

(1) The name of the proposed party;

(2) A statement that the subscribers thereto have affiliated one with another for the purpose of forming the party; and

(3) A statement that the subscribers to the notice intend to nominate candidates for elective office;

whereupon the party shall, under the party name chosen, have all the rights of a political party whose ticket shall have been on the ballot at the preceding general election.

Plaintiffs contend that S.D.C.L. § 12–5–1(2, 3) violate their rights under the first and fourteenth amendments to the Constitution to vote, to associate, and to express their own views.[1] The defendants in turn

---

1. Plaintiffs in their complaint also challenge as unconstitutional under the first and fourteenth amendments the filing deadline and ten percent signature requirement contained in S.D.C.L.

argue that South Dakota has a compelling interest in enforcing § 12–5–1(2, 3), particularly in requiring that new parties make a preliminary showing of substantial support in order to qualify for a place on the ballot. The constitutionality of § 12–5–1(2, 3) is before this court on countermotions for summary judgment. For the reasons following, the court concludes that § 12–5–1(2, 3) are unconstitutional. Plaintiffs' motion for summary judgment is granted and defendants' motion for summary judgment is denied. Judgment will be entered accordingly.

## I.

■ S.D.C.L. § 12–5–1(2) requires signers of a new party petition to declare at the time of signing that they "have affiliated one with another for the purpose of forming the party." The meaning of this language is plain: only those voters who have united to form the party are eligible to sign the petition.

■ S.D.C.L. § 12–5–1(3) requires signers to declare at the time of signing the petition that they "intend to nominate candidates for elective office." Since South Dakota prohibits a person from nominating candidates "of a party of which he is not a member", S.D.C.L. § 12–6–8, *see Smith v. Ward,* 47 S.D. 243, 197 N.W. 684 (1924), a person signing a new party petition under § 12–5–1(3) thereby declares an intention to register as a member of the new party.

## II.

On two occasions, courts of other jurisdictions have held unconstitutional state election law provisions having an effect similar to that of S.D.C.L. § 12–5–1(2, 3). In *Anderson v. Mills,* 664 F.2d 600, 609–10 (6th Cir.1981), the Sixth Circuit invalidated a Kentucky statute requiring signers of a candidate nominating petition to declare at the time of signing that they desire to vote for that candidate in the general election. The court explained the ramifications of this desire to vote provision as follows:

§ 12–5–1 and the ballot position designated for incumbent parties in S.D.C.L. § 12–16–3. These

A potential subscriber, who is uncertain about whom he will support in the general election, but with an interest in the candidate, will be unable to sign the petition because of the requisite declaration. The impact to the candidate is equally drastic. He is unable to espouse his views because the declaration greatly curtails his ability to appear on the ballot and become widely known. The possibility of having new candidates with unusual and creative political philosophies is greatly reduced. As a result this requirement fosters a system which favors the status quo, while discouraging independent candidates and new political parties.

*Id.* 664 F.2d at 609.

Although recognizing that the state has a legitimate interest in requiring a candidate to make a preliminary showing of "a significant modicum of support" and that this statute "may be the most effective means to determine the support a candidate has in the community", the court ruled that the statute "also greatly, and unnecessarily, curtails associational and voting rights.... Kentucky has less burdensome alternatives available to carry out its legitimate goal." *Id.* 664 F.2d at 610.

Similarly, in *North Carolina Socialist Workers Party v. North Carolina State Board of Elections,* 538 F.Supp. 864 (E.D. N.C.1982) the court preliminarily enjoined the enforcement of a North Carolina statute which provided that signers of a new party petition thereby "request and direct the county board of elections to change [their] political party affiliation" to the new party immediately upon its certification as a party. Relying upon the first and fourteenth amendments, the court held that this disaffiliation requirement unduly burdened a potential new party's access to the ballot, as well as a person's right to vote effectively:

[A] voter may wish [this particular party] to be on the ballot, may even ardently

claims are not now before the court.

support its candidates and principles, but is constrained from signing the petition because his signature has the automatic effect of affiliating him with the Party. In general, the ability of the Party to obtain a position on the ballot and even to solicit members is burdened, as is the ability to vote effectively of persons who wish to consider the Party's candidates but do not wish to join the Party.

*Id.* 538 F.Supp. at 866.

### III.

■ This court must conduct a "hard and realistic review" of S.D.C.L. § 12–5–1(2, 3). *McLain v. Meier,* 637 F.2d 1159, 1163 (8th Cir.1980).[2] Defendants do not deny that § 12–5–1(2, 3) implicate fundamental rights secured by the first and fourteenth amendments to associate, to vote, and to express one's views.[3] Rather, they contend that South Dakota has several

compelling interests in enforcing § 12–5–1(2, 3). Foremost among these the State contends is the interest in ensuring that a new party garner substantial support before its name is placed on the primary election ballot.

■ A state has a legitimate interest in requiring a new party seeking access to the ballot to make "some preliminary showing of a significant modicum of support." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). If for no other reason, this is to avoid confusion and waste by cluttering the ballot with the names of frivolous parties and candidates—thereby ultimately discouraging voters and frustrating the election process. *Anderson v. Celebrezze,* — U.S. —, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983); *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184–85, 99 S.Ct. 983, 990–991, 59 L.Ed.2d 2301 (1979); *Jenness v. Fortson, supra,* 403 U.S.

---

**2.** Although in *McLain v. Meier* the Eighth Circuit reversed a lower court which had reviewed a North Dakota ballot access statute under the rational basis standard, the appropriate standard of review in ballot access cases "is not always easy to discern." 637 F.2d at 1162–65. *See* Case Comment, *Elections—Right of Suffrage and Regulation Thereof—Official Ballots; Validity of Ballot Access and Ballot Position Restrictions,* 57 N.D.L.Rev. 495, 502–03 (1981) (reviewing Supreme Court decisions pertaining to constitutionality of ballot access statutes). The Supreme Court recently counseled:

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any litmus-paper test that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. The results of this evaluation will not be automatic; as we have

recognized, there is "no substitute for the hard judgments that must be made." [*Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974) ].

*Anderson v. Celebrezze,* — U.S. —, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

**3.** In *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979), the Court declared that:

> Restrictions on access to the ballot burden two distinct and fundamental rights, "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes,* [393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968) ]. The freedom to associate as a political party, a right we have recognized as fundamental, see 393 U.S. at 30–31 [89 S.Ct. at 10–11], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, "voters can assert their preferences only through candidates or parties or both." *Lubin v. Panish,* 415 U.S. 709, 716 [94 S.Ct. 1315, 1320, 39 L.Ed.2d 702] (1974). By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences. And for reasons too self-evident to warrant amplification here, we have often reiterated that voting is of the most fundamental significance under our constitutional structure.

at 442, 91 S.Ct. at 1976. Plaintiffs concede that South Dakota may legitimately require a new party to demonstrate a significant level of support, but argue instead that this objective can be accomplished by means less restrictive than those employed in S.D.C.L. § 12–5–1(2, 3). This latter argument rests on good authority. The Supreme Court has emphasized that " 'even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty' ... [the] require[ment] that States adopt the least drastic means to achieve their ends ... is particularly important where restrictions on access to the ballot are involved." *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. at 185, 99 S.Ct. at 991 (citations omitted).

■ It is manifest that S.D.C.L. § 12–5–1(2, 3) unduly burdens plaintiffs' constitutionally protected right of reasonable access to the ballot. The experience of minority parties in South Dakota demonstrates in part the harshness of § 12–5–1(2, 3). The last time a third party appeared on the ballot in South Dakota was 1932. Moreover, the declarations required of petition signers under § 12–5–1(2, 3) differ markedly from those imposed by other states. Minnesota, Montana, and Colorado, for example, do not regulate the language which may appear on nominating petitions; it is only necessary that voters affirm their desire to have the new party placed on the ballot. *See* Minn.Stat. § 204B.07 (1982); Mont.Code Ann. § 13–10–601 (1983); Colo. Rev.Stat. § 1–4–801 (1980); In North Dakota, Florida and Texas, as well, signers need only declare that they desire the party to have a position on the ballot. *See* N.D. Cent.Code § 16.1–11–30 (1982); Fla.Stat. § 99.096 (1982); Tex.Elec.Code Ann. Art. 13.45(2)(b) (Vernon 1982). There are numerous ways in which voter support for a new party can be demonstrated. But the requirements of S.D.C.L. 12–5–1(2, 3), that only voters who are affiliated with the new party and who intend to nominate its candidates may petition, are unnecessarily restrictive. The Supreme Court has held that:

The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation. Abolitionists, Progressives, and Populists have undeniably had influence, if not always electoral success. As the records of such parties demonstrate, an election campaign is a means of disseminating ideas as well as attaining political office... Overbroad restrictions on ballot access jeopardize this form of political expression.

*Illinois State Board of Elections v. Socialist Workers Party, supra,* 440 U.S. at 185–86, 99 S.Ct. at 991.

### IV.

■ As a final argument, defendants assert that S.D.C.L. §§ 12–7–1 and 12–16–1, which permit a candidate of a party failing to qualify for a position on the ballot pursuant to § 12–5–1 to appear on the ballot as an independent affiliated with that party, provide an adequate substitute for any unduly burdensome ballot access restrictions imposed on political parties by § 12–5–1(2, 3). In *McLain v. Meier, supra,* 637 F.2d 1159, the Eighth Circuit considered a similar contention by the State of North Dakota, in defense of a particular ballot access restriction, and rejected it:

A candidate who wishes to be a party candidate should not be compelled to adopt independent status in order to participate in the electoral process. As the Supreme Court has recognized, "the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown, supra,* [415 U.S. 724, 745, 94 S.Ct. 1274, 1286, 39 L.Ed.2d 714 (1974)]. The Constitution requires that the access requirements as to both party-backed and independent candidates be reasonable.

*Id.,* 637 F.2d at 1165.

### CONCLUSION

The legitimate state interest at issue here can be adequately safeguarded by

means less burdensome. The requirements of the statute in suit are needlessly restrictive. It is not for the court to say what legislative plan shall be adopted to take the place of S.D.C.L. 12–5–1(2, 3). However, plaintiff is entitled to the declaratory and injunctive relief which it is within the jurisdiction of this court to grant. Accordingly, the court concludes that facially, and as applied to plaintiffs, S.D.C.L. 12–5–1(2, 3) violate the first and fourteenth amendment rights of plaintiffs. Defendants should therefore be restrained and enjoined from enforcing S.D.C.L. 12–5–1(2, 3) and judgment awarding plaintiffs such injunctive relief, with costs and attorney fees, shall be entered this date.