The LIBERTARIAN PARTY, a National Political Organization; the Libertarian Party of Missouri; and Chad G. Colopy, State Chairman of the Libertarian Party of Missouri, Plaintiffs,

v.

Christopher BOND, in his official capacity as the Governor of the State of Missouri; James Kirkpatrick, in his official capacity as the Secretary of State of the State of Missouri; and Henry Koch, in his official capacity as the Director of Elections for the State of Missouri, Defendants.

No. 84–2186C(5).

United States District Court, E.D. Missouri.

Oct. 10, 1984.

David Sasser, Fred R. Seipold, Boise, Idaho, Charles D. Sindel, Clayton, Mo., for plaintiffs.

Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

## MEMORANDUM

LIMBAUGH, District Judge.

On September 18, 1984 plaintiff first filed complaint in this Court requesting declaratory relief and preliminary and permanent injunctive relief. Plaintiff submitted petitions to the Missouri Secretary of State to have the Libertarian Party recognized as a party in order for its candidates to be placed on the ballot for the November 6, 1984 general election. The Secretary of State refused to recognize the Libertarian Party as a party as the petitions did not have sufficient signers as required by law. Section 115.315 R.S.Mo. Plaintiff urges the Court to declare Sections 115.315 through 115.317, R.S.Mo. unconstitutional because they discriminate against the voters of the various election districts of the State of Missouri by limiting the value or power of their vote. Plaintiff asks that the Court direct defendants to recognize the Libertarian Party as a Party and to allow plaintiffs' candidates to be placed on the ballot for the general election to be held November 6, 1984. The Court is urged to enjoin defendants from printing the ballot until this controversy can be resolved.

After informal conference between counsel and the Court, it was agreed that defendants would waive service of process and file answer on October 1, 1984. At that time, the parties would stipulate as to undisputed facts and offer testimony on disputed issues. The entire case was then to be submitted on the merits because of time constraints.

Answer was filed by defendants on October 1, 1984, placing the case at issue. No testimony was heard as the parties filed stipulation as to all facts accompanied by exhibits. Briefs and arguments were presented and the matter was submitted to the Court on the merits on October 1, 1984.

The facts reveal that The Libertarian Party, founded in 1971, is a national organization of electors and politically inclined citizens who have joined together, at both the national and state levels, for the purposes of espousing political philosophy and providing an alternative choice in the sponsorship and election of public officials. The Party is currently officially organized in all fifty (50) states and the District of Columbia and is actively pursuing its objectives in all jurisdictions.

The Presidential and Vice Presidential candidates of the Libertarian Party were on the ballots of all fifty (50) states and the District of Columbia in the 1980 general election.

The Presidential and Vice Presidential candidates of The Libertarian Party have been certified for inclusion on the 1984 general election ballots in thirty-five (35) states and the District of Columbia as of October 1, 1984.

Over forty (40) members of the Libertarian Party currently hold elected offices.

The Libertarian Party of Missouri is the arm of the national organization known as the Libertarian Party and is designated to carry out the Libertarian Party's objectives within the State of Missouri.

Chad G. Colopy is the authorized and recognized chairman of the Libertarian Party of Missouri and is a citizen, resident and registered voter in the State of Missouri.

At all relevant times Christopher Bond is the Governor, James Kirkpatrick is the Secretary and Henry Koch is the Director of Elections of the State of Missouri.

Section 115.315–317 R.S.Mo.1978 is the statutory method now provided in Missouri for a newly formed political party to gain access to the Presidential and Vice Presidential general election ballot in the State of Missouri.

There were 2,088,027 total votes cast in the last general gubernatorial election of 1980 in the State of Missouri.

Plaintiffs filed their petition to form a new political party pursuant to Section 115.315 R.S.Mo.1978 with the Office of the Secretary of State on August 6, 1984 and he and/or his agents, employees and representatives verified signatures as follows:

| | |
|---|---|
| First District | 4,214 signatures verified. |
| Second District | 5,702 signatures verified. |
| Third District | 4,348 signatures verified. |
| Fourth District | 221 signatures verified. |
| Fifth District | 4,686 signatures verified. |
| Ninth District | 4,947 signatures verified. |

The number of signatures required to equal 2% of the total vote cast in each of the six districts in which plaintiffs secured signatures for the 1980 general gubernatorial election in order to comply with the requirements of Section 115.315(4) R.S.Mo. 1978 is as follows:

| | |
|---|---|
| First District | 4,266 |
| Second District | 5,348 |
| Third District | 5,090 |
| Fourth District | 4,432 |
| Fifth District | 4,486 |
| Ninth District | 4,536 |

The parties joint exhibit 2, attached hereto, is a true and exact map of the Missouri Congressional Districts as they exist at all times relevant hereto.

Plaintiffs were officially notified by the Secretary of State of Missouri of the results of the certification of plaintiffs' petition as aforesaid on September 7, 1984.

Defendant, James C. Kirkpatrick and defendant, Henry Koch, denied ballot access for plaintiffs' presidential and vice presidential candidates and electors for the reason that plaintiffs' failed to meet the requirements set forth in Section 115.315(4) R.S.Mo.1978 and specifically that plaintiffs had less than the needed signatures in the First, Third and Fourth Districts, pursuant to Section 115.315(4) R.S.Mo.1978 although they had more than the needed signatures in the Second, Fifth and Ninth Districts.

Plaintiffs secured 24,118 verified signatures throughout the State of Missouri which is in excess of 1% of the total vote cast in the 1980 general gubernatorial election in the State of Missouri, but which is less than 2% of the total vote cast in the 1980 gubernatorial election.

The last date that the 1984 general election ballot for the State of Missouri can feasibly be changed is 16 days before the general election of November 6, 1984 to wit: October 20, 1984.

In 1980, the Libertarian Party was able to comply with all Missouri statutory provisions relevant hereto, and the party candidates for President and Vice President appeared on the Missouri November 1980 general election ballot; however, the Libertarian Party candidates appearing on the 1980 general election ballot failed to receive sufficient votes statewide or in a single district or county of the state to become an established political party pursuant to the provisions of Section 115.317 R.S.Mo. 1978.

The Libertarian Party is not the only party to have successfully complied in previous general election years with the provisions of Section 115.317 R.S.Mo.1978 and other political parties have in the past, on two occasions, been able to have placed on the general election ballot of Missouri candidates for statewide office pursuant to the provisions of that statute or its predecessor.

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201 and 42 U.S.C. §§ 1983, 1985 and 1988 in that there is a deprivation of rights guaranteed to plaintiffs by the First, Fifth, Twelfth and Fourteenth Amendments to the United States Constitution. Plaintiffs also invoke pendant jurisdiction of this Court to decide claims arising under State law. Although defendants deny jurisdiction is vested in this Court in their answer, no basis for this assertion is set out in their brief. The Court will assume jurisdiction as asserted by plaintiffs.

The standard of review which courts have most frequently used in determining whether ballot access laws do or do not violate the First, Fifth or Fourteenth amendments to the constitution is the "least burdensome method" of achieving a "compelling state objective". *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 1565, 75 L.Ed.2d 547 (1983). The apparent compelling state objective or in-

terest asserted here is to enable a voter to have a candidate of his choice placed on the ballot so he can vote for that candidate. If this voting or ballot access right is to be classified as a compelling state interest, it must be decided whether Missouri statutes requiring minimum signatures from congressional districts as a prerequisite to having a candidate's name placed on the general election ballot, is overburdensome.

■ Defendants suggest they need only prove the requirements of the challenged statutes have a rational basis "to a legitimate state interest" as the statutes are at most a de minimus burden on a new party seeking access to the ballot. This Court determines that when the right to vote is at issue, the compelling state interest test as articulated in *American Party of Texas* should be used as the standard of review. Applying that standard to the facts of this case, the requirements of the challenged Missouri statutes are, in fact, the least restrictive alternatives of furthering a compelling state interest when the spirit and intent of that test is also considered.

■ The spirit and intent of the standard of review in the constitutional construction of ballot access laws suggests that contemporaneous with the public interest objective of having a candidate's name placed on the ballot so a voter may vote for that candidate, is the need to demonstrate a significant modicum of support for that candidate before placing a name on a ballot in order to avoid confusion, deception and frustration in the democratic process at the general election. This need is also an important state interest and must temper that part of the standard requiring the "least restrictive alternative." *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Thus "... (A)s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process...." *Storer v. Brown* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

In *Jenness,* the Court upheld a Georgia law which provided that a nominee of a "political body" or an independent candidate may have his name on the ballot if he files a nominating petition signed by not less than 5% of those eligible to vote at the last election for the office the candidate is seeking. There was no geographical distribution requirement in the Georgia law so the 5% group could be composed of eligible voters wherever they might reside in Georgia.

The case of *Udall v. Bowen,* 419 F.Supp. 746 (S.D.Ind.1976), aff'd. mem. 425 U.S. 947, 96 S.Ct. 1720, 48 L.Ed.2d 191 (1976) construed favorably an Indiana statute which involved geographical distribution requirements. Indiana law requires a candidate who wishes his name placed on the Indiana presidential preferential primary ballot to submit to the Secretary of State by at least 50 days before the date of the primary election, petitions bearing the signatures of at least 500 registered Indiana voters from each of that state's eleven congressional districts. Five hundred registered voters per district amounted to slightly less than two-tenths of 1% of the total voters registered to vote in each district.

Geographical requirements of the Federal Election Campaign Act of 1971 were also considered in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Election Campaign Act set up as a threshold eligibility requirement that the presidential candidate raise at least $5,000.00 in each of 20 states, counting only the first $250.00 from each person contributing to the candidate. The Court held this requirement to be constitutional on three grounds. One was that congress may require some preliminary showing of a significant modicum of support as an eligibility requirement for public funds. Another was that the states have important interests in limiting places on the ballot to those candidates who demonstrate substantial popular support. The final ground was that the (funding) requirement serves the important public interest against providing artificial incentives to splintered parties and unrestrained factionalism.

In order for a political party to be formed in Missouri after January 1, 1978, petitions declaring an intention to form the party must be filed with the Missouri Secretary of State no later than the first Monday in August, preceding the general election for which the petition is submitted. Section 115.315 and 115.329 R.S.Mo.

If the new party is to be formed for the entire state, the petition shall be signed by the number of registered voters in each of the several congressional districts which is equal to at least 1% of the total number of votes cast in the district for governor in the last gubernatorial election, or by the number of registered voters in each of one-half of the several congressional districts which is equal to at least 2% of the total number of votes cast in the district for governor at the last gubernatorial election. Section 115.315(4) R.S.Mo.

The filing of a valid petition shall constitute the political group a new party for the purpose of placing its name and the names of the candidates which appeared in the petition on the ballot at the next general election. If, at an election in which the new party's candidates first appear, any of its candidates for a statewide office receives more than 2% of all votes cast for the office, the new party shall become an established political party for the state. Section 115.317 R.S.Mo.

█ Are these statutes overburdensome within the spirit and intent of the compelling state interest standard of review? It is the opinion of this Court that they are not.

State legislative bodies walk a delicate tightrope as they search for the middle ground between selecting a simplistic method for enabling prospective candidates to be named on a general election ballot and requiring the candidate to have significant support before placing his name on the ballot. Obviously, a simplistic approach would be to have less than meaningful requirements for ballot access. Yet, the achieving of the compelling state objective demands more. If there is no reasonable showing of a candidate's statewide support, confusion, deception, frustration and indeed, chaos could result.

When the Missouri law became effective January 1, 1978, there were ten congressional districts. Today, there are nine. The population of each of these districts is virtually equal. *Shayer v. Kirkpatrick,* 541 F.Supp. 922, 935–944 (W.D.Mo.1982).

The one percent requirement is not overburdensome. Even if it could be so construed every prospective party has an alternative of qualifying under the 2% requirement utilizing only one-half of the congressional districts. *Jenness v. Fortson, Udall v. Bowen, Buckley v. Valeo, supra.*

Plaintiff urges that *Jenness* is not applicable here as there were no geographical distribution requirements. It is correct that the required signatures could come from any place in the state of Georgia. The number of signatures required, however, was 5% of those eligible to vote at the last election for the office the candidate is seeking. Eligible voters constitute more than persons actually voting so 5% of this group is a substantial requirement, irrespective of the geographical location of the signers. In 1980, there were 2,088,027 total votes cast for Governor in Missouri. Five percent of this number is 104,401. Plaintiff gathered only 24,118 signatures in an attempt to qualify for the 1984 general election. Had the Georgia rule prevailed in Missouri, it would have been most burdensome for plaintiff to qualify. Assuming there were more eligible voters than actual voters, the required number to qualify would have been even greater. Yet, the court in *Jenness* determined the 5% rule met the compelling state interest standard of review.

Plaintiff also suggests the ruling in *Udall v. Bowen, supra,* is not controlling here. The State of Indiana, in *Udall,* required 500 signatures in each congressional district as a ballot qualification. As this was only one-fifth of one percent, plaintiff suggests *Udall* is not applicable as Missouri requires five times as many signatures as does Indiana. Yet, the principle remains

that geographical signature prerequisites are not a constitutional bar in ballot qualification cases. Certainly, a one percent requirement from all congressional districts or in the alternative, a two percent requirement in one-half of the districts is not onerous.

In support of its position, plaintiff cites *Blomquist v. Thomson*, 739 F.2d 525 (10th Cir.1984) and *Libertarian Party of Nebraska v. Beermann*, 598 F.Supp. 57 (D.Neb.1984). The courts in each of these cases held certain state laws unconstitutional which required signatures from each county of a state. Obviously, county populations vary substantially and the one person-one vote concept would be violated with such a requirement. These requirements are distinguishable from the Missouri statutes.

In 1980, plaintiff met the Missouri requirements it now attacks in 1984. Enough signatures were obtained in the required congressional districts to enable plaintiff, the Libertarian Party of Missouri, to qualify as a party and to have its candidates placed on the ballot then. Its candidates were unable to garner 2% of all votes cast for any office in the 1980 election and plaintiff was ineligible to qualify as an established political party. It must, therefore, conform to the same ballot requirement process now as it did in 1980. If Missouri law is constitutionally unsound, it is of no consequence that plaintiff has formerly conformed to state requirements. Yet, it is somewhat incongruous that plaintiff asserts in 1984 a constitutional violation as a last resort when it is now unable to comply on the eve of an election.

The Missouri statutes in question do in fact meet constitutional muster and conform to the spirit and intent of the standard of review prescribed in ballot access cases. Judgment shall be entered for the defendants on the merits of the complaint. As plaintiffs are unable to prevail on the merits, the motions for temporary and permanent injunction shall be denied.

The foregoing constitute findings of fact and conclusions of law as mandated by rule.

EXHIBIT 2

**MISSOURI CONGRESSIONAL DISTRICTS**